Lucile Welder (Mrs. James F. Welder, Jr.), et al. [1] v. Commissioner. Welder v. Commissioner
Docket Nos. 110760-110768.
United States Tax Court
1944 Tax Ct. Memo LEXIS 391; 3 T.C.M. (CCH) 56; T.C.M. (RIA) 44018; January 22, 1944
*391 Harry C. Weeks, Esq., and Wright Morrow, Esq., for the petitioners. Donald P. Moyers, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These consolidated proceedings involve Federal income and excessprofits taxes as follows: Income
Excess-
Docket No.
Petitioner
Year
Tax
Profits Tax
110760
Lucile Welder
1937
$ 9,642.93
1938
965.43
1939
1,318.04
110761
J. B. Wood
1937
9,931.40
1938
366.15
1939
982.59
110762
Elizabeth Wood
1937
42,764.17
1938
4,954.55
1939
7,023.59
110763
Madeline Smith
1937
38,901.66
1938
5,553.22
1939
7,544.38
110764
Estate of James F. Welder, Jr., dec.
1937
42,935.84
1938
8,212.47
1939
7,004.12
110765
James F. Welder Heirs
1937
37,641.61
$31,041.29
1938
27,469.37
19,977.72
1939
45,552.69
33,129.23
110766
Wm. A. Smith
1937
8,878.14
1938
451.04
1939
1,047.82
110767
W. J. Crabb
1937
6,884.97
1938
188.51
110768
Dolores Crabb
1937
36,049.19
1938
4,829.92
The contested issues are: (a) Whether income realized from oil and gas royalties and bonuses and gravel royalties from separately owned property contributed *392 to a partnership is separate or community property. (b) Whether depletion previously allowed on this property which is restored because the oil and gas lease were terminated without production is properly added to partnership income, and the partners' distributive share charged therewith as separate income. The petitioners concede that the respondent's treatment of the income realized from the oil and gas royalties and the gravel royalties together with the restored depletion for the taxable year 1937 and for the period January 1, 1938 to September 1, 1938 is correct under the decision of the Circuit Court of Appeals on a prior appeal (. The respondent concedes, on the basis of the same decision, that the petitioner, James F. Welder Heirs, Docket No. 110765, was not an association taxable as a corporation for the years 1937, 1938 and 1939, but was a partnership. Findings of Fact Throughout the years 1937, 1938 and 1939, James F. Welder, Jr., was the husband of Lucile Welder; J. B. Wood was the husband of Elizabeth Wood; Wm. A. Smith was the husband of Madeline Smith; and J. W. Crabb was the *393 husband of Dolores Welder. During those periods all of the respective husbands resided with their respective spouses in Texas. Each of these individuals filed income tax returns for each of the years involved with the collector of internal revenue for the first district of Texas. For the same periods, James F. Welder Heirs filed partnership returns with the collector of the first district of Texas. Each of the individuals reported as part of their respective incomes one-eighth of the total income reported in the partnership returns for the corresponding periods. On August 29, 1938, the disabilities of coverture of Elizabeth Wood, Madeline Smith and Dolores Welder were removed by appropriate proceedings in the district court of Refugio County, Texas. On September 1, 1938 the Welder children (Dolores Welder, James F. Welder, Jr., Madeline Smith, and Elizabeth), joined by their respective spouses, and Mrs. Kate B. Welder, executed an instrument captioned "Amended Articles of Partnership". The provisions of the "Amended Articles of Partnership" are adopted and made findings of fact by reference as though specifically set forth in full herein. The affairs of James F. Welder Heirs were *394 conducted under the terms of the "Amended Articles of Partnership" until the death of James F. Welder, Jr., on July 10, 1941, after which the executors of the Estate of James F. Welder, Jr., deceased, joined in a further instrument. In this latter instrument Mrs. Kate B. Welder was substituted as manager of James F. Welder Heirs to fill the vacancy created by the death of James F. Welder, Jr. This instrument vested in Mrs. Kate B. Welder, as trustee for James F. Welder Heirs, a partnership, all the property, real, personal or mixed, held on July 10, 1941 by James F. Welder, Jr., in the same capacity. This instrument, however, did not extend the period for liquidating the affairs of the partnership in the event of the death of a partner, fixed in the "Amended Articles of Partnership". The sources of income and deductions of James F. Welder Heirs for the period September 1, 1938 through December 31, 1938 and for the year 1939 were as follows: Period September 1, 1938, through
December 31, 1938
Income
(1) Cattle sales
$ 43,411.44
(2) Lease rentals
5,027.06
(3) Land rentals
3,596.63
(4) Oil and gas royalties
73,998.87
(5) Depletion restored to income
6,985.00
(6) Gravel royalty
431.95
Deductions
(7) Cost of cattle sold
$ 23,117.34
(8) Accounting and attorney fees
1,200.00
(9) Pasture rents
6,655.38
(10) Ranch labor
789.65
(11) Ranch supplies and expenses
11,749.95
(12) Depreciation
559.16
(13) Gross production taxes
1,435.39
(14) Taxes (ad valorem, principally)
19,544.74
(15) Depletion on royalties
20,349.69
Year 1939
Income
(1) Profit on cattle sales
$ 98,714.05
(2) Interest received
6,690.66
(3) Rents received
81,232.06
(4) Oil and gas royalties
147,189.71
(5) Gravel royalties
2,050.37
(6) Depletion restored to income
57,519.46
Deductions
(7) Salaries and wages
$ 3,639.22
(8) Pasture rents
11,635.37
(9) Cattle death losses
4,006.14
(10) Depreciation
2,877.00
(11) Ranch supplies and expense
25,303.15
(12) Accounting fees
900.00
(13) Attorney fees
2,586.74
(14) Dues
50.00
(15) Depletion on royalties
40,477.17
(16) Taxes (ad valorem, principally)
25,844.63
*395 All of these receipts were deposited in a single account in the Victoria National Bank of Victoria, Texas, in thename of James F. Welder Heirs. From this fund the partnership paid its expenses, including taxes, purchased cattle and made distributions to its partners. The distributions between September 1938 and December 31, 1938 amounted to $40,000 and the distributions in the year 1939 amounted to $240,000, and were equal in amount among the four partners. All of the real property which was contributed by the four Welder children to James F. Welder Heirs, as recited in the "Amended Articles of Partnership" was the separate property of the four Welder children. The royalties, depletion, gross production and ad valorem taxes referred to in the income and deductions listed above related to that real estate. The respective spouses of the four Welder children are not members of the partnership of James F. Welder Heirs. On the basis of the method of division of income between separate and community income classified as was done in the year 1936 (see 41 B.T.A. at page 694), the division of the income and deductions of James F. Welder Heirs between separate *396 and community income for the two periods involved herein is reflected in the following schedules: Community
Cattle sales
$ 43,411.44
Lease rentals
5,027.06
Land rentals
3,596.63
Oil and gas royalties
$ 73,998.87
Depletion restored to income
6,985.00
Gravel royalty
431.95
Total
$ 81,415.82
$ 52,035.13
Deductions
Cost of cattle sold
$ 23,117.34
Accounting and attorney fees
1,200.00
Pasture rents
6,655.38
Ranch labor
789.65
Ranch supplies and expenses
11,749.95
Depreciation
559.16
Gross production taxes
$ 1,435.39
Taxes (principally ad valorem)
18,976.23
568.51
Depletion on royalties
20,349.69
Total
$ 40,761.31
$ 44,639.99
Net income
$ 40,654.51
$ 7,395.14
One-fourth net income
$ 10,163.63
$ 1,848.79
Year 1939
Profit on cattle sales
$ 98,714.05
Interest received
6,690.66
Rents received
81,232.06
Oil and gas royalties
$147,189.71
Gravel royalties
2,050.37
Depletion restored to income
57,519.46
Total
$206,759.54
$186,636.77
Deductions
Salaries and wages
$ 3,639.22
Pasture rents
11,635.37
Cattle death losses
4,006.14
Depreciation
2,877.00
Ranch supplies and expense
25,303.15
Accounting fees
900.00
Attorney fees
2,586.74
Dues
50.00
Depletion
$ 40,477.17
Taxes (ad valorem, principally)
24,870.20
974.43
Total
$ 65,347.37
$ 51,972.05
Net income
$141,412.17
$134,664.72
One-fourth net income
$ 35,353.04
$ 33,666.18
*397 The net income of James F. Welder Heirs for the period September 1, 1938 through December 31, 1938, according to respondent's determination, was $48,049.65. There was included in this calculation $6,985 of restored depletion; gravel royalties of $431.95; oil and gas lease bonuses of $6,985; and oil and gas lease royalties of $73,998.87. The net income of James F. Welder Heirs for 1939, as determined by the respondent, amounted to $276,076.89, which included restored depletion amounting to $57,519.46, gravel royalties of $2,050.37 and oil and gas royalties of $147,189.71. The depletion restoration was made with respect to various oil and gas leases made and bonuses received therefor in the years 1935 and 1936. All of the oil and gas leases involved in the restored depletion question were ordinary commercial oil and gas leases of which Exhibit 25 in evidence, and hereby incorporated in our findings of fact by reference, is typical. The activities of James F. Welder Heirs in the cattle business consisted chiefly of buying young animals, growing them, feeding them, and marketing them. The capital accounts of the partners in James F. Welder Heirs had not been set up on the books of *398 James F. Welder Heirs as provided in the "Amended Articles of Partnership" at the date of the hearing of the instant proceeding because of the then pendency of the 1936 cases heretofore referred to, and also because of the then consequent inability of the interested parties to tell what amounts of this capital should be treated as separate property and what amounts should be treated as community property of the respective partners. In making the Federal estate tax return for the Estate of James F. Welder, Jr., his executors, acting upon the advice of the attorney who had handled all of the tax cases heretofore refefred to, reported his interest in the partnership for Federal estate tax purposes in the following way: All the assets were valued and liabilities deducted and one-fourth treated as the value of his partnership interest. This, in turn, was divided between community and separate property by treating as separate property an amount equal to one-fourth of the value of all lands which the Welder children had acquired by gift, including mineral values attaching thereto and all the remainder as community property. As disclosed by the estate tax return, the net worth of James F. *399 Welder Heirs, as of July 10, 1941, was $1,215,936.41, which included over $100,000 in notes receivable, more than 10,000 head of cattle valued at more than $480,000, and land, including mineral values, worth $810,000. The facts found and embodied in our former decisions (; ) not inconsistent with the foregoing findings of fact are adopted and made findings of fact by reference as though entirely set forth herein. Opinion There is no material dispute regarding the facts presented in these proceedings. Giving effect to the concessions of the respective parties, two questions remain. The female Welder children, after having their coverture disabilities removed, joined with their brother in executing "Amended Articles of Partnership" on September 1, 1938. Thereupon they contributed as capital to the partnership certain separately owned real property. The questions presented are: (1) Whether oil and gas royalties and bonuses and gravel royalties received by the partnership are community property, and (2) whether depletion previously allowed may be treated as income to the partnership where such depletion *400 is restored by reason of the leases having terminated without production. The individual petitioners contend that when this separately owned real estate was conveyed to James F. Welder, Jr., as trustee for the partnership, it became partnership assets. That as the partnership was formed to engage in the cattle business, in the oil business, in lending moneys and related activities, the partners' distributive shares are community property. The respondent argues that the formation of the partnership works no mutation or change in the character of the property, where, as here, it can be traced and identified. Respondent further asserts that under the Federal taxing statutes a partnership is not a separate entity but a tax computing unit. We think the respondent's position is sound. The recent case of , [2] is authority for that conclusion. That case involved income tax deficiencies of these same individual petitioners for the year 1936 under a prior instrument which the petitioners contended was a "partnership." *401 In the course of its opinion the Circuit Court in that case said: * * * Arguing * * * that the instrument called an instrument of "agency contract and trust" entered into by them on February 15, 1932, with respect to their separately owned lands, and the transactions under it, created a partnership in their lands, they insist that this made the oil royalty and bonus income each received, on account of leases of them made by their agent and trustee, community instead of separate property. * * * * *
* * * In short, fallaciously assuming that if a partnership resulted from the agreements and acts in question, petitioners' separate lands lost their separate character and became community, petitioners have directed the whole force of their contentions to establishing that there was a partnership. Instead of assuming the premise that there was a partnership and denying the conclusion that this effected a change in the character of the property, the Board and this court on the former opinion have disputed and found contrary to the premise. * * * * *
* * * If we could agree with petitioners that there was a partnership, we should still conclude that the royalty and bonus income was *402 not community but their separate property. For it is quite clear that the consequences which petitioners seek to deduce from the application of the name partnership to their relation, that their separately owned property would cease to be separately owned, do not at all follow therefrom. * * * While the remarks may not have been necessary to the court's decision as rendered, the statement of the court as to the effect of a partnership on the character of the property was not mere dictum. It was a categorical answer to the petitioners' contention that there existed in fact a partnership. Does the fact that the married female petitioners had their coverture disabilities removed and thereafter so amended the instrument as to remove any question of the fact of partnership have the effect of changing the rule as stated by the Circuit Court? We think not. It is clear to us that the court had in mind the general rule as to the character of real property contributed as capital to a partnership, as well as the rule of property in Texas, that real property retains its character through all mutations where it has not become so mingled and confused that it has lost its capacity to be identified. *403 ; . The respondent has demonstrated that the separate property can be traced. Even if the remarks of the Circuit Court be regarded as obiter we are convinced that it correctly states the law applicable here. The respondent has recognized the rule that profits of the partnership are community property. ; . However, royalties received from oil and gas in place are not "rents" or "income" or "profits" under the laws of Texas. . Petitioners have referred us to no case where the courts of Texas have held that separate realty contributed to a partnership thereby loses its character as separate property where it remains capable of being identified. The fact that courts of equity often regard a partnership as a separate entity for certain purposes is of no significance here. The Federal taxing statutes do not regard a partnership as a separate entity for tax purposes. . *404 Nor do we think that the gravel royalties are to be treated differently than the oil and gas royalties. Gravel in place is a part of the realty. When sold in the ground the proceeds are the sale of land and not revenue from it. Under the Treasury Income Tax Regulations gravel is defined as a "mineral." [3]
The petitioners further contend that the respondent erred in adding to partnership income in 1938 restored depletion in the amount of $6,985 and in 1939 in the amount of $57,519.46. These restorations occurred with respect to leases made in 1935 and 1936 by James F. Welder Heirs, as constituted under their original agreement, and the depreciation allowed in those years, and restored because the leases terminated without production. The basis of petitioners' contention is that restored depletion belongs to the individuals to whom the depletion was originally allowed; and since the partnership acquired the lands on September 1, 1938, subject to the oil and gas leases which the individuals had theretofore made, the restored depletion can not be treated as partnership income. We think the question thus posed is moot here and therefore do not decide *405 it. Since the partners each owned the property from which the restored depletion arose when that depletion was originally allowed, and so were entitled to equal shares in the restored depletion, the ultimate tax result would in this case be the same as if the respective amounts were charged to the individuals without passing through the partnership. Respondent is therefore affirmed on this issue despite the possible technical defect in the method of computation used by respondent to reflect the restored depletion in income. In all docket numbers decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: J. B. Wood, Docket No. 110761; Mrs. J. B. Wood (Elizabeth Wood), Docket No. 110762; Mrs. Wm. A. Smith (Madeline Welder Smith), Docket No. 110763; Estate of James F. Welder, Jr., deceased, C. K. McCan, Roger Fleming and W. B. Callan, Independent Executors, Docket No. 110764; James F. Welder Heirs, Docket No. 110765; Wm. A. Smith, Docket No. 110766; W. J. Crabb, Docket No. 110767; and Dolores Welder (Mrs. W. J. Crabb), Docket No. 110768.↩
2. ; affd., ; remanded for further consideration ; ; affd., .↩
3. T.R. 103, Sec. 19.23(m)-1.↩